# Exhibit D

STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
COUNTY OF GASTON | 21 CVS 4593

2021 NOV 18 P 12:34

GASTON CO., Q.S.C.

SANDRA CAMPBELL )
       Plaintiff, BY_____ )
       )
       ) **COMPLAINT**
vs. )
       ) (Jury Trial Demanded)
       )
HARTFORD LIFE AND ACCIDENT )
INSURANCE COMPANY, )
       )
       Defendant. )

Plaintiff, Sandra Campbell, by and through her attorneys, states as her Complaint the following:

## I. INTRODUCTION

1. This action arises as a result of Defendant Hartford Life and Accident Insurance Company's denial and refusal to pay and provide Plaintiff Sandra Campbell with short-term disability insurance benefits, long-term disability insurance benefits and life insurance coverage with waiver of premium.

2. This Court has jurisdiction over the parties and over the subject matter in this Complaint in accordance with the laws of North Carolina, including, *inter alia*, N.C.G.S. §1-75.4.

3. Plaintiff, Sandra Campbell ("Plaintiff" or "Mrs. Campbell"), is a citizen and resident of Gastonia, Gaston County, North Carolina.

1

4.     Upon information and belief, Defendant Hartford Life and Accident Insurance Company ("Defendant" or "Hartford") is an insurance company doing business throughout the United States and is engaged in substantial activity in Gaston County, North Carolina.

5.     Hartford is the insurance company that both administers and insures the short-term disability ("STD") benefits, long-term disability ("LTD") benefits and life insurance coverage owed to Plaintiff.

6.     Upon information and belief, Hartford insures numerous persons in Gaston county and throughout the state of North Carolina under the same insurance policies at issue here.

## II. MRS. CAMPBELL'S EMPLOYMENT AND DISABILITY INSURANCE

7.     Around 1988, Mrs. Campbell began working for an entity within The Charlotte-Mecklenburg Hospital Authority, now d/b/a Atrium Health.

8.     Mrs. Campbell worked for Atrium Health for approximately thirty (30) years before becoming disabled.

9.     Mrs. Campbell most recently worked for Atrium Health full time as a certified medical assistant, performing various clinical and other functions in a medical setting involving patient care.

10.     Based on her employment, at all times relevant to this action Mrs. Campbell was an insured person under a Hartford insurance policy or policies providing: STD insurance benefits ("STD Policy"); LTD insurance benefits ("LTD Policy"), and life

2

insurance coverage ("Life Insurance Policy") issued by Hartford to The Charlotte-Mecklenburg Hospital Authority d/b/a Atrium Health, collectively the "Policies."

11. Hartford both administers claims and is responsible for providing and paying all benefits due under the Policies from Hartford's own funds.

12. The Policies are excluded from coverage under the federal Employee Retirement Income Security Act of 1974 ("ERISA") pursuant to 29 U.S.C. §1003(b)(1).

13. Hartford expressly refused to follow the requirements of ERISA regulations in its handling of Mrs. Campbell's claims.

14. On or about August 7, 2018, Mrs. Campbell became permanently physically disabled from working after a fall with loss of consciousness.

15. Since her disability onset, Mrs. Campbell has suffered from disabling vestibular symptoms including without limitation, cognitive dysfunction, headaches, vertigo, dizziness, imbalance, visual disturbance and hearing loss.

16. Mrs. Campbell has continued to receive appropriate medical care for her conditions, which records document her ongoing symptoms and disability.

17. Mrs. Campbell applied for benefits from Hartford under the Policies.

18. Initially and at various times thereafter, Mrs. Campbell's treating physicians determined and documented for Hartford that it would not be possible or safe for Mrs. Campbell to work given her medical conditions.

19. At all relevant times, Mrs. Campbell has met all requirements in the Policies for eligibility and receipt of benefits.

20. Upon information and belief, upon the fifteenth (15th) day of disability, the STD Policy provides that Hartford will pay the insured person a weekly benefit for a maximum twenty-four (24) weeks.

21. Upon information and belief, after an elimination period of the later of 180 days or the expiration of STD benefits, the LTD Policy provides that Hartford will pay the insured person a benefit each month that she is disabled, through normal Social Security Retirement Age.

22. Upon information and belief, the Life Insurance Policy provides continued life insurance coverage with waiver of premium while a claimant is disabled.

23. Mrs. Campbell remains disabled under the Policies and has not yet reached her normal Social Security Retirement Age.

## III. HARTFORD'S UNREASONABLE BENEFIT DENIALS

24. Upon information and belief, Hartford approved Mrs. Campbell's STD benefits for the period of on or about August 21, 2018 through on or about October 20, 2018.

25. By letter dated November 20, 2018, Hartford denied Mrs. Campbell's STD benefits beyond October 20, 2018, wrongly alleging she was no longer disabled.

26. Hartford's decision letter relied on Mrs. Campbell's recent medical examination which, contrary to Hartford's decision, documented that her disabling symptoms persisted and worsened.

27. Through counsel, Mrs. Campbell timely appealed Hartford's decision to terminate her STD benefits.

4

28. Mrs. Campbell underwent a functional capacity examination which determined, *inter alia*, that she is at risk of falls in the workplace and is "incapable of sustaining the Sedentary level of work for an 8-hour day/40-hour week."

29. Hartford and its paid consultants received a copy of the Functional Capacity Examination report for review and failed to credit or rebut its findings.

30. Hartford failed to conduct an unbiased, competent medical review of Mrs. Campbell's claim or have her examined by an independent physician.

31. On the STD appeal, Hartford retained and paid Tatyana Gitlevich, M.D., to perform a paper review of some of Mrs. Campbell's medical records.

32. Upon information and belief, Hartford routinely retains and pays Dr. Gitlevich to review documents for Hartford claims.

33. Dr. Gitlevich never personally examined, evaluated or spoke with Mrs. Campbell.

34. Dr. Gitlevich's report represents an incomplete and selective review and offers no credible evidence disputing Mrs. Campbell's disability.

35. By letter dated August 7, 2019, based on Dr. Gitlevich's opinion, Hartford upheld its adverse decision on Mrs. Campbell's STD benefits.

36. By letter dated August 21, 2019, Hartford relied on Dr. Gitlevich's prior report to deny Mrs. Campbell's LTD benefits.

37. Mrs. Campbell timely appealed the LTD denial.

38. On appeal, Hartford retained Guru Motgi, M.D., to perform a paper review of some of Mrs. Campbell's medical records.

5

39. Dr. Motgi never personally examined, evaluated or spoke with Mrs. Campbell.

40. Dr. Motgi's report represents an incomplete and selective review and offers no credible evidence disputing Mrs. Campbell's disability.

41. Dr. Motgi's report stated, *inter alia*, that "[t]here is still evidence of subjective cognitive symptoms and vertigo, warranting restrictions/limitations" from August 7, 2018 through the present, but conversely stated Mrs. Campbell could work.

42. The Policies contain no provisions requiring or defining objective evidence to receive benefits.

43. Hartford and its consultants offered no explanation how Mrs. Campbell could perform either consistently or safely her job functions in a clinical medical setting given her undisputed cognitive symptoms, dizziness and vertigo.

44. Hartford indicated that Mrs. Campbell would only be able to perform certain job functions for four hours a day.

45. A claimant is disabled under the Policies if she unable to work the required number of full time hours in a regularly scheduled work week.

46. By letter dated June 22, 2020, Hartford upheld its adverse decision on Mrs. Campbell's LTD benefits.

47. Hartford opened a claim for Mrs. Campbell's life insurance waiver of premium, but upon information and belief, never issued a decision on it.

48. Hartford received information for Mrs. Campbell's claims such that the only reasonable conclusion from all of the evidence is that she is disabled and that she is entitled to benefits under the Policies.

6

49. Hartford's adverse decisions to deny Mrs. Campbell's benefits are grossly wrong, without basis and contrary to the evidence before it.

50. Hartford internally recognized Mrs. Campbell's claims as valid but nonetheless in bad faith refused to approve them.

51. Hartford had an inherent and substantial conflict of interest in administering Mrs. Campbell's claims, by virtue of the fact that Hartford is both the insurer of the Policies and payor of benefits, as well as the decision maker on whether benefits should be paid.

52. Accordingly, Hartford has a pecuniary interest in denying claims under the Policies.

53. Hartford's pecuniary interest in denying claims under the Policies extends to Mrs. Campbell's claims.

54. In denying her claims, Hartford wrongly deprived Mrs. Campbell of her primary source of income and caused her financial hardship and loss of other employee benefits attendant to STD and LTD benefits.

## IV. CLAIMS FOR RELIEF

## COUNT ONE: BREACH OF CONTRACT

55. Plaintiff incorporates by reference paragraphs 1 through 54 as if fully set forth below.

56. Plaintiff and Defendant have a valid, binding contract as set forth in the Policies.

7

57. At all relevant times, Mrs. Campbell has been disabled and met the terms of the Policies entitling her to ongoing benefits.

58. All conditions precedent, to the extent that any such conditions were required under the terms of the Policies, have been performed or have occurred.

59. Mrs. Campbell is entitled to receive benefits from Hartford due through the present and continuing.

60. In denying and refusing to pay Mrs. Campbell's benefits, Hartford breached its contractual obligations under the Policies.

61. Hartford's officers, directors, or managers participated in and/or condoned its conduct and decision on Mrs. Campbell's claims.

62. Hartford's actions described herein proximately caused actual injury to Plaintiff, including but not limited to loss of benefits, loss of use and earnings those benefits would have provided, loss of other employee benefits, consequential damages, and other damages as Plaintiff may prove.

## COUNT TWO: BAD FAITH INSURANCE/BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

63. Plaintiff incorporates by reference paragraphs 1 through 62 as if fully set forth below.

64. At all times relevant to this action, Hartford owed Mrs. Campbell, as its insured, an implied duty of good faith and fair dealing.

8

65. Hartford breached its duty of good faith and fair dealing by denying and failing to pay and approve Mrs. Campbell's valid and justifiable claims for benefits, despite receiving substantial evidence of Mrs. Campbell's disability.

66. Hartford owes Mrs. Campbell a duty of good faith and fair dealing in assessing her claims and eligibility for continuing benefits under the Policies.

67. Hartford's required duty of good faith and fair dealing, includes, *inter alia*:

    a. the duty to credit substantial and reliable evidence of Mrs. Campbell's disability;

    b. the duty to review the evidence as a whole and not to selectively review the evidence;

    c. the duty not to consult medical personnel whom Hartford suspects, knows or should know will would render biased opinions favorable to Hartford;

    d. the duty not to rely on internally created and/or flawed medical or vocational reviews;

    e. the duty to fully and fairly investigate the claim;

    f. the duty to consider Mrs. Campbell's interests under the Policies at least equal, if not higher than its own;

    g. the duty to design and conduct the entire claim review process not for the biased purpose of obtaining documentation to support the adverse claim decision;

h.  the duty to design and conduct the claim review in a manner not calculated to reach and uphold a pre-ordained desired result of denying Mrs. Campbell's benefits;

i.  the duty to fairly and adequately evaluate Mrs. Campbell's medical conditions;

j.  the duty to properly consider and credit the medical opinions of Mrs. Campbell's treating physicians;

k.  the duty to properly consider and credit Mrs. Campbell's statements about her disability;

l.  the duty not to require additional proofs of disability not contained in the Policies.

m.  the duty to provide the claimant with reasonable access to the claim file and all information Hartford considered, generated or obtained in administering the claim.

68. Hartford breached any one, or combination, or all of its duties of good faith and fair dealing owed to Mrs. Campbell as described hereinabove.

69. Hartford's actions were in bad faith.

70. Hartford's actions were reckless, willful, wanton and in conscious disregard of its duty to pay Mrs. Campbell's valid claims and ignoring Mrs. Campbell's potential danger to herself and others from her working in a clinical medical setting.

71. Hartford's officers, directors, or managers participated in and/or condoned its conduct and decision on Mrs. Campbell's claims.

10

72. Hartford's actions described herein proximately caused actual injury to Plaintiff as more fully described hereinabove and as Plaintiff may prove.

## COUNT THREE: UNFAIR AND DECEPTIVE TRADE PRACTICES

73. Plaintiff incorporates by reference paragraphs 1 through 72 as if fully set forth hereinabove.

74. In its handling of Mrs. Campbell's claims and otherwise, and with such frequency as to indicate a general business practice, Hartford engaged in unfair or deceptive acts or practices, in or affecting commerce, including but not limited to the following:

    a. giving greater weight to physicians who did not examine the claimant over the opinions of treating physicians, in violation of 11 N.C. Admin. Code §4.0319;

    b. violating one or more well-known and universally recognized and accepted standards of conduct for insurers, including, *inter alia*, those described hereinabove;

    c. refusing to pay the claim without conducting a reasonable investigation based upon consideration of all available information; and,

    d. not attempting in good faith to effectuate prompt, fair and equitable settlement of a claim in which liability has become reasonably clear.

75. Hartford's actions described above are in violation of the North Carolina Insurance Unfair Trade Practices Act, N.C.G.S. §58-63-15(11) and as such, constitute a

11

Case 3:22-cv-00007-MOC-DCK   Document 1-4   Filed 01/06/22   Page 12 of 15

*per se* violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C.G.S. §75-1.1, et. seq.

76. Separate and apart from any violation of N.C.G.S. §58-63-15(11), Hartford's actions described herein are in violation of the UDTPA.

77. Hartford's actions described above proximately caused actual injury to Plaintiff as more fully described hereinabove and as Plaintiff may prove.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays the Court to enter judgment for Plaintiff and otherwise enter an Order providing that:

1. Plaintiff Sandra Campbell and Defendant Hartford have a valid insurance contract(s) under the Policies;

2. Plaintiff is entitled to STD benefits for the maximum period;

3. Plaintiff has been entitled to LTD benefits since the end of the applicable elimination period and continuing through the present and beyond;

4. Plaintiff is entitled to ongoing life insurance coverage with waiver of premium;

5. Defendant breached its duties and contractual obligations to fairly administer the Policies and provide all benefits to Plaintiff;

6. Defendant's breaches were willful and in bad faith;

7. Plaintiff shall receive any and all damages to which she may be entitled under the Policies and law, including but not limited to: disability benefits and life

12

insurance coverage under the Policies, compensatory damages in excess of $25,000.00, pre-judgment interest, post-judgment interest, costs of litigation, punitive damages, treble damages pursuant to N.C. Gen. Stat. §75-16 and attorneys' fees pursuant to N.C. Gen. Stat. §75-16.1 or as otherwise allowed by law;

8. Plaintiff shall have her claims decided by a jury;

9. Plaintiff shall receive any further relief permitted by law and deemed to be lawful, just and proper.

Respectfully submitted, this 17th day of November, 2021.

THE SASSER LAW FIRM, P.A.
Attorneys for the Plaintiff

By: Charles McB. Sasser
State Bar No.: 10027
1011 East Morehead Street
Suite 350
Charlotte, NC 28204
Phone (704) 342-4200
Fax: (704) 342-0798
Msasser@sasserlawoffice.com

**INSURANCE**

1201 Mail Service Center
Raleigh, NC 27699-1201

7018 0680 0000 8759 6722

Hasler
12/13/2021
US POSTAGE $08.56

FIRST-CLASS MAIL

Legal

Hartford Life & Accident Insurance Company
One Hartford Plaza
Hartford, CT 06155